

NUMBER 13-10-00535-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**PAUL PAWLAK,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 347th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

A Nueces County jury convicted appellant Paul Pawlak of three counts of sexual

assault of a child, a second-degree felony, *see* TEX. PENAL CODE ANN. § 22.011(a)(2)

(West 2011); one count of sexual assault, a second-degree felony, *see id.* §

22.011(a)(1); and one count of attempted sexual assault, a third-degree felony. *See id.*;

*id.* § 15.01 (West 2011). The trial court sentenced Pawlak to fifteen years' imprisonment for one count of sexual assault of a child; twenty years' imprisonment each for the remaining counts of sexual assault of a child and one count of sexual assault; and eight years' imprisonment for the attempted sexual assault charge.

By three issues, Pawlak appeals his conviction and contends that (1) the trial court erred in admitting extrinsic evidence of child pornography during the guilt-innocence phase of Pawlak's trial; (2) the trial court erred in denying Pawlak's motion for directed verdict for counts related to complainants M.R. and R.O.[1]; and (3) the trial court erred in allowing the State's witnesses testify as to the truthfulness of the complainants. We affirm.

## I.    BACKGROUND

Pawlak was indicted by a Nueces County grand jury in August 2010 on five counts of sexual assault of a child, two counts of attempted sexual assault, and one count of sexual assault. These charges involved complaints made by five males regarding incidents that occurred from 1994 until 2008.

### A.    The State's Case-in-Chief

#### 1.  Complainant R.O.[2]

R.O. testified that in July 2008, Pawlak approached him in a small pickup outside a Corpus Christi taco shop. Pawlak offered to pay R.O. money to perform yard work around Pawlak's home. R.O., who was fifteen years old at the time, agreed to perform the yard work and left the restaurant in the pickup bound for Pawlak's home. R.O.

---

[1] We will utilize aliases to protect the identities of the complainants.

[2] R.O.'s outcry relates to Counts 1–4 of Pawlak's indictment.

testified that after R.O. finished the yard work, Pawlak invited him inside the house.

R.O. testified that Pawlak then asked him if he wanted to take a shower, and R.O. agreed. After the shower, Pawlak provided R.O. with a pair of shorts to wear. Pawlak then offered R.O. a coconut-flavored drink in a bottle with two lizards on the label. After taking the drink, R.O. testified that he ingested "six or seven" "Z-bars"[3] provided by Pawlak. At this point, R.O. sat on Pawlak's couch when Pawlak asked him if he had shaved his legs or any other part of his body. The next thing R.O. remembered was that Pawlak began to put his hand up R.O.'s shorts through one of the leg openings. Initially, R.O. testified that Pawlak touched his "private parts" with his hand, but could not remember if Pawlak made oral contact with his penis, or vice versa. However, on recall, R.O. testified that Pawlak did in fact make oral contact with his penis, but he did not tell the jury about it during his prior testimony because he was embarrassed. R.O. also did not remember whether Pawlak touched his anus with Pawlak's penis, but only remembered that he felt pain.

Testimony was also elicited from R.O.'s mother. R.O.'s mother testified that on the night of July 16, 2008, she remembered that R.O. arrived home close to midnight or 1 a.m.—at least two hours past his curfew—and was dropped off by an unknown male later identified as Pawlak. R.O.'s mother stated that R.O. entered their home, immediately fell to the floor, and vomited a white substance. She also testified that R.O. then stated that "he" raped [R.O.]. R.O.'s mother called the police and requested an ambulance. The ambulance arrived and transported R.O. to Driscoll Children's Hospital.

---

[3] "Z-bars" are described as the street-name for the anti-anxiety prescription drug Xanax.

At Driscoll Children's Hospital, R.O. was evaluated by a certified sexual assault nurse examiner (SANE) Sonja Eddleman. R.O.'s medical record was admitted into evidence over Pawlak's objection. In part, the record states the following narrative history from R.O.:

> I was laying on the couch and he started rubbing my legs. Then he reached up inside my shorts and was grabbing my [testicles]. I told him to stop. He said, no I'm not going to stop. He started to put his finger in my butt hole. He sucked my [penis]. Then he put his [penis] in my mouth. He turned me over and put his [penis] in my butt hole.

Eddleman described R.O. as a "good historian," who was tearful "at times when relating the history." Eddleman also testified that R.O.'s laboratory tests tested positive for marihuana as well as a group of benzodiazepine, specifically Lorazepam, which is the family name of the prescription drug Xanax. Eddleman testified that she could not pinpoint the exact amount of the drug that R.O. ingested, but only that his body contained "a high dosage of the drug." R.O.'s t-shirt was also tested for DNA. Lab results indicated that the t-shirt contained semen stains from an unknown male source.[4]

Corpus Christi Police Detective Sergio Ramirez testified that he investigated R.O.'s mother's preliminary sexual assault of a child complaint filed against Pawlak. After some initial non-cooperation from R.O. and his family, Detective Ramirez interviewed R.O., and R.O. identified Pawlak as his abuser. Pawlak was arrested and local media published his photo. Detective Ramirez testified that after Pawlak's photo was released, other individuals came forward and made outcries about Pawlak.

---

[4] According to lab results, the semen did not match R.O. or Pawlak's DNA.

### 2. Complainant N.G.[5]

N.G., who was nineteen at the time of trial, testified that he first met Pawlak five or six years prior when N.G. was jogging down Alameda Street in Corpus Christi, Texas. According to N.G., Pawlak approached him and asked if he wanted to earn some money working for Pawlak. N.G. agreed and helped Pawlak set up some props for Pawlak's event decoration business. In July 2008, N.G. was seventeen and performed work for Pawlak and came back to Pawlak's home, drank alcohol, and took "some pills" provided by Pawlak. N.G. stated that he could not move after taking the pills and remembered that Pawlak tried to straddle him as he sat on the couch. N.G. pushed Pawlak away, the two got into a fight, and N.G. left Pawlak's home. N.G. stated that despite this incident, he continued to work for Pawlak. N.G. testified that another incident occurred at Pawlak's house when N.G. was drunk and "got drugged up." The next thing N.G. testified to remembering was waking up naked in Pawlak's bedroom and Pawlak molesting him. N.G. remembered waking up face down on the bed with Pawlak penetrating his anus with Pawlak's penis. N.G. stated that he was in a state of "semi-consciousness" where he "knew what was going on," but could not move.

N.G. made his outcry to police while incarcerated with the Texas Youth Commission in Hidalgo County, after his stepmother notified him of the pending charges against Pawlak.

### 3. Complainant J.P.[6]

J.P. testified that the first and only time he met Pawlak was on a summer night in

---

[5] N.G.'s outcry relates to Count 5 of Pawlak's indictment.
[6] J.P.'s outcry relates to Count 6 of Pawlak's indictment.

5

2002, when he was sixteen years old. According to J.P., Pawlak approached him in a small pickup to hand him a church flyer while he used a payphone outside of a Times Market. Pawlak offered J.P. a ride, which he accepted, and then offered J.P. a drink, which he also accepted. J.P. described the beverage as a "gristly" coconut-flavored SoBe brand drink with a lizard on the label. J.P. remembered entering Pawlak's house, using the restroom, then waking up on his stomach on top of a bed. J.P. testified that Pawlak was on top of him and penetrating his anus with Pawlak's penis. J.P. testified that at that point he felt drowsy and could not function. Pawlak later dropped him off at the Times Market where the two had met earlier that day.

### 4. Complainant M.R.[7]

M.R. testified that he was seventeen years old when he first met Pawlak as he walked to a bus stop in Nueces County. Pawlak approached M.R. to talk about God and Christianity and handed M.R. a Christian flyer. Pawlak offered M.R. a ride, which he accepted, and then offered M.R. a beverage, and he accepted. M.R. stated that after driving around, they ended up at Pawlak's house. M.R. described the beverage as a coconut-flavored drink with a green lizard on the bottle. M.R. then testified that he sat on Pawlak's couch and blacked out. The next thing that M.R. remembered was waking up at his cousin's house with a busted nose and chin, without money, and hurting from his rectum.[8] M.R. stated that he did not seek medical attention because he was humiliated. M.R. testified, however, that he does not remember being sexually assaulted.

---

[7] M.R.'s outcry relates to Count 7 of Pawlak's indictment.

[8] M.R. testified that it "definitely felt like" his rectum was penetrated.

6

### 5. Complainant D.O.[9]

D.O. met Pawlak during the 1990s through church. D.O. testified that he helped Pawlak with home improvements throughout the summer. D.O. remembered a road trip from Corpus Christi to Harlingen in the summer of 1994 that he took with Pawlak when he was sixteen. D.O. testified that Pawlak stopped for beer on the way back to Corpus Christi and D.O. drank "about five beers," and returned to Pawlak's house. D.O. stated that he remembered waking up the next morning, unclothed on part of his body, in Pawlak's bed. He testified that he did not remember much from the night before, felt sick from drinking so much, and was not hurting on any part of his body.

The trial court granted Pawlak's motion for directed verdict on D.O.'s count of the indictment because the statute of limitations period had run on that count.

### B.   The Defense

The defense presented three character witnesses, including J.H., who lived with Pawlak during his childhood and testified that Pawlak never abused him.

### C.   The Verdict

The jury found Pawlak guilty of (1) two counts of sexual assault of a child based on R.O.'s allegations; (2) one count of sexual assault based on N.G.'s allegations; (3) one count of sexual assault of a child based on J.P.'s allegations; and (4) one count of attempted sexual assault based on M.R.'s allegations. This appeal followed.

### II.   ADMISSION OF PHOTOGRAPHS

By his first issue, Pawlak contends that the trial court abused its discretion when it admitted hundreds of digital images of gay pornography seized from Pawlak's home

---

[9] D.O.'s outcry relates to Count 8 of Pawlak's indictment.

computer—including some which depicted children—over his objections under rules of evidence 404(b) and 403. *See* TEX. R. EVID. 403; 404(b). At the time of trial, Pawlak faced a separate indictment for possession of child pornography.

## A. Standard of Review

A ruling on whether extraneous-offense evidence is admissible is a question for the trial court. *See Moses v.* State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). So long as the trial court's ruling is within the "zone of reasonable disagreement," no abuse of discretion exists and the ruling will be upheld. *Id.*; *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc). A trial court's ruling is usually within this zone if it shows that the extraneous evidence is relevant to a material, non-propensity issue and the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See De La Paz*, 279 S.W.3d at 344*.*

## B. Discussion

### 1. Rule 404(b)

Pawlak argues that the trial court abused its discretion by admitting the digital images because the State's sole argument in support of the admissibility of these photographs was to show that Pawlak was a bad person; and therefore, capable of committing the crimes charged. We disagree.

Generally, for evidence to be admissible, it must be relevant. *See* TEX. R. EVID. 402. Extraneous evidence of other crimes, wrongs, or acts is not admissible to prove

8

character of a person in order to show action in conformity therewith. *Id.* at R. 404(b). However, extraneous-offense evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *Id.* Another permissible purpose to admit extraneous-offense evidence is to rebut a defensive theory. *See Montgomery*, 105 S.W.3d at 626.

At trial, the State's main argument to support its offer of the photographs was in response to the following examination of defense witness, Carrie Pennel. The photographs were offered and admitted after the following colloquy:

DEFENSE COUNSEL: You're aware, though, that there are very serious allegations made against [Pawlak]?

PENNEL: I am.

DEFENSE COUNSEL: And you know what those allegations are?

PENNEL: I know that—what the news said, and I know what Paul has said to me about pornography and about drugging and raping young boys. I'm sorry, I don't believe that.

DEFENSE COUNSEL: Okay.

PENNEL: I don't—I've never seen anything violent or—I've never seen anything, to me, that would make me think that Paul could violate a child or an adult. He's very passive, freaky, fabulous guy.

The trial court agreed with the State's argument that defense counsel had opened the door to the child pornography charge by eliciting Pennel's testimony and allowed the introduction of evidence.

Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim.

9

App. 2009) (holding that "a party opens the door by leaving a false impression with the jury that invites the other side to respond"); *see Renteria v. State*, 206 S.W.3d 689, 697 (Tex. Crim. App. 2006). Here, the trial court agreed with the State's contention that Pennel's testimony opened the door to the pornography because the defense elicited testimony about Pennel's opinion as to whether Pawlak could have committed the charges complained of and as a result, left a false impression with the jury. Accordingly, the trial court's ruling under rule 404(b) was within the zone of reasonable disagreement.

### 2. Rule 403

However, despite the fact that a party may open the door to rebuttal evidence, the trial court has the discretion to exclude the evidence under rule of evidence 403. *See Hayden*, 296 S.W.3d at 554; *Martinez v. State*, 17 S.W.3d 677, 687 (Tex. Crim. App. 2000). Pawlak argues further that even if photos were relevant, the trial court nonetheless abused its discretion by admitting them over his rule 403 objection that the probative value of the photographs were substantially outweighed by the danger of unfair prejudice.[10] *See* TEX. R. EVID. 403.

A court may consider many factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, including: (1) the number of exhibits offered; (2) their gruesomeness; (3) their detail; (4) their size; (5) whether they are in color or in black and white; (6) whether they are close up; (7) whether the body depicted is clothed or naked; (8) the availability of other means of

---

[10] This Court ordered the trial court reporter to supplement the record in this case to include the two original compact discs (Exhibits 19 and 20) admitted at trial, which contain the photographs at issue. Therefore, the State's argument that Pawlak waived error for failing to request a complete record on appeal is overruled. *See* TEX. R. APP. P. 34.6(d).

10

proof; and (9) and other circumstances unique to the individual case. *See Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010). The admissibility of photographs over an objection is within the sound discretion of the trial court. *Id.*

The photos in this case were numerous, in color, and depicted young males of unknown ages engaged in various sex acts. The State's primary purpose for its offer was to rebut Pawlak's defense theories that Pawlak was incapable of committing the charges for which he stood accused. Our review of the record shows that while the images were graphic, the State did not spend an excessive amount of time on this evidence, and the images were no more heinous than the testimony elicited of the complainants. *See generally Jones v. State*, 119 S.W.3d 412, 422–23 (Tex. App.—Fort Worth 2003, no pet.). Therefore, we hold that the trial court's ruling, under rule 403 and *Davis*, was within the zone of reasonable disagreement and not an abuse of discretion.

### 3. Waiver

Finally, Pawlak argues that the trial court improperly admitted the photographs prior to the testimony of the State's sponsoring witness; and also that the trial court failed to instruct the jury that extraneous evidence can be considered only for a limited purpose. *See Jackson v. State*, 320 S.W.3d 873, 887 (Tex. App.—Texarkana 2010, pet. ref'd). As a general prerequisite to presenting a complaint for appellate review, the record must show that (1) the complaint was made to the trial court by a timely request, objection, or motion that states the grounds for the ruling sought with enough specificity to make the trial court aware of the complaint and complied with the rules; and (2) that the trial court ruled expressly or implicitly on the request, objection, or motion or refused to rule. *See* TEX. R. APP. P. 33.1(a). Our review of the record does not show that

11

Pawlak objected to the trial court's admission prior to the sponsoring witness's testimony, nor does it show that Pawlak requested the trial court to consider the photographs for the limited purpose of rebutting a defensive theory. Because Pawlak did not object or make a request to the trial court on these arguments and receive a ruling, these issues are not properly preserved for appellate review. *See id.*; *see Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

Accordingly, we overrule Pawlak's first issue.

### III. SUFFICIENCY CHALLENGE

In his second issue, Pawlak contends that the trial court erred in denying his motion for directed verdict regarding counts related to complainants M.R. and R.O.

### A.      Standard of Review

In sufficiency challenges, we must apply the *Jackson v. Virginia*, 443 U.S. 307, 319, (1979), standard to determine whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (holding that the *Jackson* standard of review is the "only standard" that should be applied in a sufficiency review). Under *Jackson*, this Court must consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Our analysis measures the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not

12

unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal*, 286 S.W.3d at 327. We must defer to the jury's determinations of credibility and weight of the evidence because the jurors are the sole fact-finders. *See Brooks*, 323 S.W.3d at 899; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony . . . .").

**B.    Discussion**

### 1.  Sufficiency of M.R.'s Complaint

The State indicted Pawlak for one count of attempted sexual assault of M.R. Under a hypothetically correct jury charge, Pawlak is guilty of attempted sexual assault if: (1) with specific intent to commit sexual assault, (2) Pawlak does an act:  to wit, unzipping M.R.'s pants and fondling M.R.; (3) amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.  *See* TEX. PENAL CODE ANN. § 15.01; *id.* § 22.011.[11]

Pawlak argues that the State presented no evidence in support of the allegations in the indictment, and Pawlak specifically cites M.R.'s testimony for support.  M.R. testified that when he was seventeen he was with Pawlak, inside Pawlak's home. Pawlak offered him a coconut-flavored drink, and he blacked out.  M.R. testified that he later woke up at his cousin's house and his rectum hurt.  M.R. testified that he called

---

[11] A person commits sexual assault if the actor: (1) intentionally or knowingly; (2) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; (3) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or (4) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.  *See* TEX. PENAL CODE ANN. § 22.011.

police after watching the initial report on Pawlak's arrest to report Pawlak's previous sexual assault against him. M.R. later notified Pawlak about what he told police, and Pawlak did not deny doing anything to him.

Before we delve into the sufficiency of this count, we note that a variance exists between Pawlak's indictment on this count and the evidence put forth at trial.[12] *See Byrd v. State*, 336 S.W.3d 242, 247 (Tex. Crim. App. 2011) (defining a "variance" as a discrepancy between the allegations in the indictment and the proof offered at trial). Such variances may be held to be immaterial—that is, little mistakes which do not prejudice a defendant's substantial rights such as failure to give the defendant notice of the crime charged or the defendant's risk of being prosecuted at a later date for the same crime. Here, the variance dealt with the manner in which Pawlak allegedly carried out his attempted sexual assault of M.R.—that is, by unzipping M.R.'s pants and fondling him. We conclude that this variance is immaterial, and we will disregard it in our sufficiency review. *See Byrd*, 336 S.W.3d at 248; *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001).

Here, the evidence shows that M.R. testified that Pawlak sexually assaulted him. Further, when M.R. later confronted Pawlak about going to the police, Pawlak did not deny that allegation. This evidence suggests that Pawlak not only attempted to commit sexual assault, but did in fact complete it. *See* TEX. PENAL CODE ANN. § 22.011; *Diaz v. State,* 491 S.W.2d 166, 167 (Tex. Crim. App. 1973) (holding that "if the offense charged is an attempt to commit an act and the proof shows the completed act such will not defeat the conviction"); *Flores v. State*, 472 S.W.2d 146, 148 (Tex. Crim. App. 1971)

---

[12] At trial, this fact was admitted to by the State.

14

(holding that a defendant may not complain on appeal when the evidence showed him guilty of a greater offense). Moreover, Pawlak's failure to deny that he sexually assaulted M.R. when confronted by M.R. provides evidence of an adoptive admission of the crime. *See Tucker v. State*, 771 S.W.2d 523, 535–36 (Tex. Crim. App. 1988) (recognizing the theory of "adoptive admissions"). Accordingly, viewing the evidence in a light most favorable to the verdict, we conclude that the jury was rationally justified in finding Pawlak guilty beyond on reasonable doubt on this count.

### 2. Sufficiency of R.O.'s Complaint

The State indicted Pawlak for two counts of sexual assault of R.O., a child, by penetrating R.O.'s anus with (1) Pawlak's finger; and (2) Pawlak's penis. Under a hypothetical jury charge, Pawlak is guilty of sexual assault of R.O. if he (1) intentionally or knowingly; (2) causes the penetration of R.O.'s anus; (3) with Pawlak's finger (count 2) and Pawlak's penis (count 3). *See* TEX. PENAL CODE ANN. § 22.011(2)(A).

Pawlak argues that the evidence does not support the conviction because the State's proof relies heavily on the SANE medical report, which was admitted over Pawlak's rule 403 objection and quotes R.O. as stating that Pawlak "put his finger in my butt hole" and "put his [penis] in my butt hole." The evidence also shows, however, that R.O. told his mother that he was raped the night Pawlak dropped him off and that he was sexually assaulted. The State also introduced a photo lineup in which R.O. identifies Pawlak as his abuser. R.O. also testified that he woke up feeling "disgusted down there" and that his "back side" was in pain. R.O. admitted on the witness stand that he was embarrassed about what Pawlak did to him and that it was difficult for him to tell strangers about it. Moreover, R.O. testified that he did not remember much of what he

15

told people following the alleged incident.  This conflict in R.O.'s testimony was a question for the jury to resolve.  *See Brooks*, 323 S.W.3d at 899.  The jury was within its province to weigh the medical report heavier than R.O.'s live testimony to the contrary, particularly in light of R.O. testifying to very embarrassing and personal events in open court.  *See id.*  Accordingly, viewing the evidence in a light most favorable to the verdict, we conclude that the jury was rationally justified in finding Pawlak guilty beyond on reasonable doubt on these two counts.

## IV. STATE'S EXPERT WITNESSES

In his final issue, Pawlak asserts that the trial court abused its discretion in allowing the State's expert witnesses to testify as to the truthfulness of the complainants' testimony.[13]

### A.      Standard of Review & Applicable Law

Trial courts have "great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case."  *Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006); *see* TEX. R. EVID. 702.  Therefore, we review a trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard.  *See Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002).  With regard to admissibility of expert witness testimony, the Texas Court of Criminal Appeals decided that:

> The use of expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror. The decision to be made remains with the jury, but the

---

[13] The State argues in its brief that Pawlak did not properly preserve this issue for appeal.  We disagree.  First, Pawlak's counsel properly raised an objection under rule 702, which was overruled by the trial court prior to Paula Rosenstein's testimony.  Second, Pawlak objected to a line of questioning asked by the State regarding matters beyond Ricardo Jimenez's expertise.  That objection was also overruled.  Accordingly, we will address the merits of Pawlak's issue.

testimonial expertise is allowed to enable the trier of fact to better comprehend the full significance of the evidence. The evidence at issue is admissible if it encompasses or "embraces" an ultimate fact; it may not *decide* that fact for the jury.

*Duckett v. State*, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990). Furthermore, expert witnesses in child sexual abuse cases may hold specialized knowledge concerning sexually abused children, but they may not possess such specialized knowledge beyond the realm of the jury regarding the truthfulness of the children. *See Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993) (en banc) (adopting one commentator's position that "experts on child sexual abuse are not human lie detectors. Nor are they clairvoyant. Nothing in the literature suggests that experts can or should replace the jury as the ultimate arbiters of credibility").

**B.    Discussion**

Here, Pawlak argues that the State's experts—Ricardo Jimenez, a program director and lead forensic interviewer at the Children's Advocacy Center, and Paula Rosenstein, a therapist who treats sexually abused children—were improperly allowed to testify about the complainants' truthfulness. We disagree.

Jimenez testified that children typically disclose abuse by "incremental disclosure" and that at times, they might shut down and not tell anymore after telling a little bit. Jimenez also testified that it is more difficult for male interviewees to disclose details of abuse due to: (1) social pressures that they put on themselves; (2) feelings of weakness; and (3) questions about their sexuality.

Rosenstein testified about a concept called "grooming" in which a sex offender takes the child victim into a situation where the child knows that they need to keep things a secret. She also testified that some children hold back details and delay outcry while

17

others make immediate outcries after abuse. Finally, Rosenstein also testified to symptoms experienced by child sex abuse victims.

Neither Jimenez nor Rosenstein's testimony suggested that the complainants' allegations were truthful nor did Jimenez and Rosensten attempt to act as human lie detectors. Rather, both experts' testimony dealt with general behavioral characteristics and traits shown by sexually abused children. *See Cueva v. State*, 339 S.W.3d 839, 867 (Tex. App.—Corpus Christi 2011, pet. ref'd). Accordingly, the trial court did not abuse its discretion in allowing the State to elicit testimony on these matters from these witnesses. *See Rodgers*, 205 S.W.3d at 528. Pawlak's final issue is overruled.

## V. CONCLUSION

The trial court's judgment is affirmed.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
23rd day of August, 2012.

18